BENÍTEZ SUGAR COMPANY, Plaintiff and Appellant, v. RAMÓN ABOY, JR., TREASURER OF PORTO RICO, Defendant and Appellee.

No. 3323. Argued December 2, 1924.—Decided March 11, 1925.

1. TAXES—IMPORT DUTIES—CONSTRUCTION OF LAW.—Section 3 of the Foraker Act, in so far as it prohibited the imposition of duties on imports, was not repealed by the Jones Act.

2. ID.—EXCISE TAX.—The tax imposed by section 18 of Act No. 42 of July 1, 1921, is an excise tax.

3. ID.—PAYMENT UNDER PROTEST—ACTION FOR REFUND.—The remedy established by Act No. 17 of May 13, 1920, for the refund of taxes paid under protest is exclusive, even in cases of unconstitutional taxes.

4. ID.—ID.—ID.—It is a condition precedent to the right of action given by Act No. 17 of May 13, 1920, that the complaint be filed within fifteen days "from and after the date of the notice -of payment under protest, signed by the collector," and the said signature is a part of the condition.

District Court of Humacao, Pablo Berga, J. Judgment for the defendant in an action for the refund of taxes. *Affirmed.*

*González Fagundo & González, Jr.,* for the appellant. The *Attorney General,* the *Supreme Court's Attorney* and the *District Attorney* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was a suit to recover taxes paid under protest on various articles introduced into Porto Rico from the United States.

As presented by counsel in this case, the principal question to be discussed is whether the Foraker Act, in so far as it prohibits a tax on imports, is still the law of this jurisdiction after the passage of our present Organic Act known as the Jones Act.

[1] The Foraker Act provided:

"And in no event shall any duties be collected after the first day of March, 1902, on merchandise and articles going into Porto Rico from the United States, or coming into the United States from Porto Rico."

Section 58 of the Jones Act says:

"Section 58.—That all laws or parts of laws applicable to Porto Rico not in conflict with any of the provisions of this Act, including the laws relating to tariffs, customs, and duties on importations into Porto Rico prescribed by the Act of Congress entitled 'An Act temporarily to provide revenues and a civil government for Porto Rico, and for other purposes,' approved April twelfth, nineteen hundred, are hereby continued in effect, and all laws and parts of laws inconsistent with the provisions of this Act are hereby repealed."

This section in itself would seem to continue in force the said cited section of the Foraker. Act. We feel bound to hold that there is nothing in the Jones Act that by neces-

sary implication caused a repeal of said section.  We have the idea, besides, that it was the intent ·of Congress to make Porto Rico like the various states where duties on importations from one state to another are expressly excluded by the Constitution of the United States, as follows:

"Art. 1, Sec. 9, subdivision 5.—No Tax or Duty shall be laid on Articles exported from any State.

"Id. Section 10, subdivision 2.—No State shall, without the consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws; and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress."

[2] So much being premised, we may examine section 18 of Act No. 42 of July 1, 1921.  It provides:

"Sec. 18.—*Motor vehicles and accessories.*—On all motor vehicles, automobiles, motorcycles, side-cars for motorcycles, motors for bicycles and launches, auto-trucks, auto-cars, electric cars, auto-tractors and tractors (excluding agricultural tractors), and on all solid or pneumatic tires, inner tubes, and on all parts and accessories for any of the articles enumerated in this paragraph, produced, manufactured, introduced or brought into Porto Rico, a tax of ten (10) per cent *ad valorem.*"

As appellant points out, referring to the *Fantauzzi Case,* reported under the name of *Successors of C. & J. Fantauzzi* v. *Municipal Assembly of Arroyo,* 30 P.R.R. 390, these taxes sought to be imposed are clearly imposts or excises.  They do not purport to be a property tax or one imposed on existing property, but the whole scheme of said section 18 is to reach specialities like manufacture or importation and the like.  We agree with counsel on both sides that the mere fact that section 18 does not use the word "import" can make no difference.  To introduce or bring into Porto Rico is synonymous with importing.

We have been considering the questions raised some-

what as if the matter were duly before us, because the Government has especially asked us to do so. In reality the judgment must be affirmed solely because of the plea of prescription filed.

[3] The Government maintained in the court below and successfully showed that this suit was filed more than fifteen days after the payment of the taxes under protest. Hence, if Act No. 17 of May 13, 1920, is applicable, as the Government maintained and the court below held, the action prescribed. The constitutionality of the said act in certain respects was sustained by us in *Freiría & Co. v. Treasurer of Porto Rico,* 32 P.R.R. 604. The constitutionality of that act is not questioned here.

The Government has utterly failed to discuss the plea of prescription and appellant attempts to deduce from this mere fact that said act is not applicable. As the court below held that the action had prescribed, we cannot reverse this case without an examination. The court read the said act and held the term of fifteen days fixed in it applicable.

Appellant maintains that act No. 17 of 1920 applies only to the general property taxes and not to the excises and imposts especially determined by the taxation here sought to be collected. The act, however, is very general. Its language follows:

"Section 1.—That whenever any taxpayer believes that he should not pay a tax because it is illegal, excessive or wrongful, he shall pay the same upon request of the collector of taxes of his district and shall request the said collector, should he desire to make any claim, to endorse the tax receipt with the statement that he pays the same under protest because he considers the tax to be illegal, excessive or wrongful, which said endorsement shall be signed by the collector."

Under this section it is clear that any tax in Porto Rico is covered by its terms.

Such a statute is the exclusive remedy of a local tax-payer. *Snyder* v. *Marx*, 109 U. S. 189; *Shelton* v. *Platt*, 139 U. S. 591, 597; *Burrill* v. *Locomobile Co.*, 258 U. S. 34, quoted with approval by this court in *Riera* v. *Benedicto*, 32 P.R.R. 105, construing the Act of 1911. As there held, this principle is applicable even in the case of an unconstitutional statute which attempts to enforce taxation.

[4] Nor can we agree with the appellant when it maintains that the date of payment under protest was not determined. The theory is that under the first two sections of the Act of 1920 the term should run from the time that the collector has endorsed the receipt and not from the actual moment of payment, and that the burden is on the Government to show the date of the receipt.

We think it was the intention of the Legislature, as disclosed in section 1, that the payment and the receipt should be contemporaneous acts. In other words, that the taxpayer need make no payment except in exchange for a receipt. Hence, when he pays the presumption would be that he obtained a receipt at the same time.

It is a condition precedent to the right of action, as disclosed by section 2 of the Act of 1920, that the taxpayer, after making payment, should file a suit within fifteen days "from and after the date of the notice of payment under protest signed by the collector." So that signing by the collector is part of said condition, the suit perhaps depends on it and the taxpayer should either set it forth in the complaint or the giving of the receipt by the collector is presumed in favor of the taxpayer's right to bring suit

In any event, fairly construed, the averments of the complaint alleging payment under protest as of a certain date mean and intend a compliance with the condition precedent both by the taxpayer and the collector.

The judgment appealed from must be affirmed.